IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Belay Reddick, ) | |
| ) | Civil Action No. 2:10-2487-DCN-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Mary M. Mitchell, ) | |
| Joseph Neal, ) | |
| R. Kelso, and ) | |
| S. Lathrop, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, a federal prisoner proceeding *pro se*, seeks relief pursuant to *Bivens. v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Before the court is the Defendants' Motion to Dismiss. (Dkt. # 25.)[2]

---

[1] In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 814-820 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Id. See also Osabutey v. Welch*, 857 F.2d 220, 221-223 (4th Cir.1988).

[2] Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." As additional matters outside the pleadings have been taken into consideration, the undersigned treats this motion to dismiss as a motion for summary judgment. *See Herbert v. Saffell,* 877 F.2d 267, 270 (4th Cir.1989) (treating a Rule 12(b) (6) dismissal as a summary judgment where the district court considered materials outside the pleadings).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action seeking damages for alleged civil rights violations. (Dkt. # 1.)  On January 12, 2011, the Defendants filed a Motion to Dismiss.  (Dkt. # 25.)  On January 13, 2011, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  (Dkt. # 26.)  On February 14, 2011, the Plaintiff filed a response opposing the motion.  (Dkt. # 31.)

## FACTS PRESENTED

The Plaintiff is a federal inmate currently incarcerated at the United States Penitentiary in Tucson, Arizona.  At the time of the incidents alleged in the Complaint, the Plaintiff was housed at the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield").

The Plaintiff has three children, two with his ex-wife, Belay II and Briann, and one with a girlfriend, DeAndre.  (Compl. at 3.)  The Plaintiff alleges that in August 2009, another ex-girlfriend, Lisa Nebo, contacted the Defendant Kelso, the Special Investigative Supervisor at FCI-Edgefield, and informed him that she had received threatening letters and phone calls from the Plaintiff.  *Id.*  She also told Kelso that she had filed a formal complaint with the Spartanburg County Sheriff's Office.  *Id.*  The

2

Plaintiff alleges that Nebo requested that her name be removed from the Plaintiff's visiting list. (Compl. at 3-4.)

The Plaintiff alleges that after Kelso submitted a report on the incident to the Defendant Mitchell, on September 17, 2009, he was notified that Mitchell had placed the Plaintiff on mail restriction prohibiting the Plaintiff from corresponding with anyone other than immediate family, his attorneys, and the court. (Compl. at 4.) The Plaintiff states he told Mitchell that the letters to Nebo were misconstrued and not "true threats." (Compl. at 4.)

On October 21, 2009, the Plaintiff states he was placed in the Special Housing Unit ("SHU") for violating a Bureau of Prison ("BOP") regulation. (Compl. at 4.) He alleges that between October 21st and October 31, 2009, he wrote three letters to Belay II and Brianna, which were not mailed out. (Compl. at 5.) He alleges he complained to Mitchell, but received no response. *Id.* He alleges several days later he complained to Kelso and Kelso told him that his three children were not on the Plaintiff' approved correspondence list. *Id.* The Plaintiff alleges he then requested a copy of his approved correspondent list, and he received a response the next day. *Id.*

The Plaintiff alleges that in December 2009 he told the Defendant Mitchell that he was unable to correspond with his immediate family and a Florida family court judge had ordered him to remain in contact with his children during his incarceration. *Id.* The Plaintiff alleges that Mitchell told the Plaintiff he would speak with Neal and in January 2010, Neal advised the Plaintiff that he would have to wait six months before he could

3

revise his list of immediate family. (Compl. at 6.) The Plaintiff alleges he requested a grievance form, which he filed on February 7, 2010. (Compl. at 7.) He states this grievance was denied and he appealed the denial to Mitchell. *Id.*

Sometime in February 2010, the institution was placed on emergency lockdown and the inmates were served bag lunches allegedly with outdated sandwiches. (Compl. 6.) The Plaintiff states that he sent a two-page letter complaining about the inmates being served out of date food and causing the inmates to become sick to United States Senator Lindsay Graham. (Compl. 6-7.)

The Plaintiff alleges that in March 2010, Neal requested that the Plaintiff submit a list of his immediate family members and their addresses which the Plaintiff states he did. (Compl. at 7.) The Plaintiff alleges that a week later Neal gave him an updated correspondence list, but the list was incomplete and had incorrect addresses. *Id.* The Plaintiff alleges he requested that the list be corrected. *Id.* On April 13, 2010, the Plaintiff alleges that counselor W. Holland gave him a revised correspondence list, but the list did not include Belay II or Brianna. (Compl. at 8.) The Plaintiff alleges that the Defendant Neal intentionally delayed the Plaintiff's grievance which was then denied as being untimely. Id. The Plaintiff appealed. On June 9, 2010, the Plaintiff's appeal was denied by the Regional Office. (Compl. at 10.) The Plaintiff appealed to the Central Office. Id. On July 29, 2010, the Central Office denied the Plaintiff's appeal. Id.

On May 4, 2010, the Plaintiff alleges that he asked the Defendant Mitchell why he was being denied the ability to correspond with his children and that Mitchell replied that

4

the mother of his children did not approve of the correspondence. (Compl. at 9.) On May 31, 2010, the Plaintiff wrote another letter to Senator Graham in which he stated that he was being denied the right to correspond with his children in retaliation for sending the Senator a prior letter. Id.

In June 2010, the Plaintiff alleges Mitchell was in the SHU and the Plaintiff asked her why she did not respond to any of his recent grievances. (Compl. at 10.) He alleges that Mitchell told him she had been away from the institution for two weeks. Id. The Plaintiff alleges he tried to give her another grievance and she refused to accept it saying she might misplace it, but she directed her escort, Officer Martin, to take it. Id.

The Plaintiff specifically alleges that the Defendants violated his constitutional rights in four ways: 1) preventing the Plaintiff from communicating by mail with his son and daughter; 2) obstructing and delaying mail from the Plaintiff to his children; 3) denying approval to add the Plaintiff's children to his approved correspondence list in retaliation for the Plaintiff's exercising his constitutional rights; and 4) interfering with the grievance process. (Compl. at 11.)

The Plaintiff is seeking a declaratory judgment that the Defendants violated his constitutional rights; a preliminary injunction prohibiting the Defendants from interfering with his correspondence with his children; nominal and punitive damages; costs; and other relief as the court deems appropriate. (Compl. at 12.)

## APPLICABLE LAW

**SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must

demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

The Plaintiff is raising three claims: 1) the removal of his children's names from his approved correspondence list; 2) the interference and holding of letters sent to his children; and 3) retaliation by denying him access to the grievance process. (Pl.'s Mem. Opp. Summ. J. Mot. at 4.)[3] The Defendants contend that the Plaintiff failed to timely exhaust his administrative remedies on these claims. The Plaintiff argues that he was prevented from exhausting his administrative remedies and that he utilized all available administrative remedies. (Pl.'s Mem. Opp. Summ. J. Mot at 10.)

The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a

---

[3] The Defendants contend that the Plaintiff is raising a claim regarding the Plaintiff's initial placement on restricted correspondence. However, the Plaintiff specifically states he is not seeking such a claim. (Pl.'s Mem. Opp. Summ. J. Mot. at. 1-2, 3-4.) The undersigned also notes that the Plaintiff states, that since filing this action, he has been allowed to correspond with his children and thus he concedes that an injunction is no longer necessary. (Pl.'s Mem. Opp. Summ. J. Mot. at 2.)

7

formal written complaint to the warden within 20 calendar days after the date upon which the basis for the request occurred. 28 C.F.R. § 542.14. If the inmate is dissatisfied with the response, he may appeal to the Regional Director within 20 days of the date of the Warden's response. 28 C.F.R. §542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel within 30 days of the Regional Director's response. *Id.* Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a).

"The inmate shall obtain the appropriate form from . . . institution staff (ordinarily, the correctional counselor)," 28 C.F.R. § 542.14(c) (1), and he or she "shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor)." 28 C.F.R. § 542.14(c)(4).

Administrative remedies are unavailable when there is no "possibility of [ ] relief for the action complained of." *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir.2004) (*citing Booth v. Churner*, 532 U.S. 731, 738 (2001)). The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible. *Id.* at 688.

It is undisputed that the Plaintiff was initially notified of his placement of correspondence restriction on September 17, 2009. At that time, the Plaintiff states he did not file any grievance because the restriction did not prevent him from corresponding with his children. However, the Plaintiff states that some time between October 21 and October 31, 2009, Officer L. Combs informed the Plaintiff that the Defendant Kelso had confiscated three letters which the Plaintiff had sent to his children. (Pl.'s Mem. Opp. Summ. J. Mot. at 7.) He states that several days later, he demanded that the letters be

returned, but Kelso refused. Id. On November 7, 2009, the Plaintiff requested a grievance from Neal, so that he could grieve the withholding of his letters, but the Plaintiff alleges that Neal refused to give him a grievance form. *Id.*[4]

A few days later, he states that he reviewed his correspondence list, and noticed his children's names were not on it. *Id.* at 8. The Plaintiff contends that he asked Neal a second time for a grievance form to grieve the removal of his children's names from his correspondence list, but again Neal refused. Id.

The Plaintiff alleges that a week later, he informed Warden Mitchell about his letters being withheld, the removal of his children from his correspondence list, and Neal's refusal to give him grievance forms. (Pl.'s Mem. Opp. Summ. J. Mot. at 8-9.)[5] He alleges that Mitchell told him that the Defendants Neal, Lathrop, and Kelso had received a memorandum from her authorizing the Plaintiff to correspond with his children. Id. at 9. He states a few days later, Neal told him that he would have to wait six months before he could make any changes to his correspondence list. The Plaintiff states he requested a grievance form, which was issued to him on February 7, 2010. The Plaintiff contends that his grievance was timely and, at that time, none of the Defendants had told him his ex-wife had requested that his two children be removed from the correspondence list. *Id.*

The Plaintiff states that a few weeks later, the institution was on lockdown and the inmates were fed sandwiches which had a "best through September 1, 2009" date

---

[4]The undersigned notes that the Plaintiff did not include this allegation in his Complaint.

[5]The allegation that he informed Mitchell that Neal had refused to give him grievance forms is also not in the Complaint.

9

stamped on them. He states that he sent a letter complaining about the inmates being served out of date food to United States Senator Lindsay Graham.

The Plaintiff states that his B-8 form was returned to him on February 17, 2010, because the issue could not be resolved informally and he was issued a B-9 form. (Pl.'s Mem. Opp. Summ. J. Mot. at 10.) He states his counselor collected the B-9 form on February 21, 2010. *Id.* He further states that a month later the B-9 form was returned to him by Neal unanswered and Neal also gave him an updated correspondence list, but his children were still not on the list. He alleges Neal intentionally held onto his B-9 form so that the Plaintiff would miss the grievance filing deadline.

The Plaintiff fails to proffer anything more than conclusory allegations that Neal denied him a grievance form on two occasions.[6] W.C. Holland, the Correctional Counselor at FCI-Edgefield, states in his declaration that he received a request for a grievance form from the Plaintiff on November 18, 2009, and that he gave the Plaintiff a B-8 informal form but that it was never returned. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2 - Holland Decl. ¶¶ 1 7.) The Plaintiff, however, contends that Holland never gave him the form.[7] The Plaintiff states that this grievance is the only one out of the 109 entries where the subject matter is omitted. This is not true. Reviewing the logbook, there are other instances of a B-8 form being issued without the subject matter being filled in. (*See* Entries # 581 and 589.) In any event, whether or not an inmate pursues

---

[6]Moreover, such allegations are incredible in light of the Plaintiff's subsequent engagement in the administrative process. If Neal had truly deprived the Plaintiff the forms, the Plaintiff presumably would have filed a grievance against Neal.

[7]The undersigned finds it odd that the Plaintiff did not also tell the Warden that Holland had denied him a grievance form when he informed her that Neal had denied him forms.

10

or completes the informal resolution component of the administrative procedures, he may request and obtain a BP-9 form from his assigned counselor. *See* 28 C .F.R. § 542.13(b) (providing for discretionary waiver of informal resolution attempts upon showing of "an acceptable reason for bypassing informal resolution"). Here, it is undisputed that the Plaintiff did not request or timely pursue a B-9 on any of his claims.

The record shows that the Plaintiff was first placed on restrictive correspondence on September 17, 2009, and by the end of October 2009 he was aware that all of his children were not included. However, the Plaintiff did not begin the grievance process on his claims regarding the names on his approved correspondence list until February 2010, well after the expiration of the appeal period. While the Plaintiff alleges the Defendants prevented him from exhausting his administrative remedies, the Plaintiff has not shown that he could not have filed the grievance despite the alleged interference. *See Jones v. Smith*, 266 F.3d 399, 399 (6th Cir. 2001) (concluding that dismissal for failure to exhaust was proper because the plaintiff failed to allege that the prison official who refused to provide a grievance form was the only source of those forms or that plaintiff made other attempts to obtain a form or file a grievance without a form). The Plaintiff provides no evidence to support his allegation that administrative remedies were unavailable, and furthermore the fact that he has filed multiple grievances since the inception of this lawsuit belies the Plaintiff's claims. Finally, the undersigned notes that there are no grievances regarding his claims that his mail has been withheld or that he has been retaliated against for writing letters to Senator Graham.

## **CONCLUSION**

Based on the foregoing, it is recommended that the Defendants' Motion to Dismiss (Dkt. # 25) be GRANTED; and the Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                                                                s/Bruce Howe Hendricks
                                                                                United States Magistrate Judge

June 9, 2011
Charleston, South Carolina

.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).